372 P.2d 715

A. E. SHEPARD, dba Shepard's Plumbing & Heating, Third-Party Appellant,

v.

A. W. MEYER, dba Wes Meyer Construction Co., Third-Party Appellee and Appellant,

v.

CORBIN-DYKES ELECTRIC COMPANY, an Arizona Corporation, Plaintiff-Appellee.

No. 6806.

Supreme Court of Arizona.

In Division.

June 29, 1962.

**382**

Nebeker & Nebeker, Yuma, Trew, Woodford & Dodd, Phoenix, for third-party appellant.

Fennemore, Craig, Allen & McClennen, Phoenix, for third-party appellee and appellant.

George T. Fike, Phoenix, for plaintiff-appellee.

McGUIRE, Superior Court Judge.

This suit involves the respective liabilities of the General Contractor and two subcontractors in connection with the construction of buildings at the Yuma Test Station near Yuma, Arizona. Suit was originally brought by Corbin-Dykes Electric Company, hereinafter referred to as the Electrical Contractor, against A. W. Meyer, dba Wes Meyer Construction Company, hereinafter referred to as the General Contractor. The General Contractor in turn brought third party proceedings against A. E. Shepard, dba Shepard's Plumbing & Heating, hereinafter referred to as the Air Conditioning Contractor.

A trial by the court without a jury resulted in the Electrical Contractor recovering judgment against the General Contractor in the sum of $4,263.96, and the General Contractor recovering judgment against the Air Conditioning Contractor in the sum of $3,590.58. The difference in amount was due to the fact that when it became apparent at the trial that the Air Conditioning Contractor was not responsible for electrical work involved in the installation of a fume hood and roto-clone, the General Contractor amended his third party complaint and asked for judgment in the amount of $3,590.58 rather than the amount previously prayed for.

The General Contractor entered into a contract with the federal government for the construction of these buildings and subcontracted out various parts of the work. The Electrical Contractor undertook to perform and complete, according to his contract, these items:

"Job #341

"All Electrical Work and Signaling System complete as per plans, including Section 22, pages 1 through 15 inclusive and Section 23, pages 1 through 4 inclusive of the specifications, for Dispensary & Infirmary Building & BW and CW Testing Laboratory, Yuma Test Station, Yuma, Arizona. Contract DA–04–353–ENG–3620.

"NO EXCEPTION".

The Air Conditioning Contractor, by his contract, agreed to perform and complete, according to his contract, these items:

"Job #341

"All Sheet Metal, General Purpose Plumbing, Infirmary Plumbing, Heat-

ing, Ventilating, and Air Conditioning complete; all as per plans including Section 5, pages 1 through 6 inclusive, Section 17, pages 1 through 26 inclusive, Section 18, pages 1 through 22 inclusive, Section 19, pages 1 through 23 inclusive, Section 20, pages 1 through 8 inclusive, and Section 21, pages 1 through 24 inclusive of the specifications, for Dispensary & Infirmary Building and BW & CW Testing Laboratory, Yuma Test Station, Yuma, Arizona, Contract DA–04–353–ENG–3620.

### "NO EXCEPTION".

Both of these subcontracts which were introduced into evidence contained the following clause:

"It is expressly understood and agreed that this Subcontract is intended, in conjunction with all other subcontracts, to produce a completed operating structure, ready for delivery to the Owner. *To this end this Subcontractor represents that he has carefully read and analyzed the plans and specifications for the work covered by this Subcontract, and particularly as such work complements, supplements or ties into any other work of any other Subcontractor,* and that there are no errors or omissions in said plans or specifications in that respect, or if there are such errors or omissions, this Subcontractor will furnish and install the same at no extra cost to the General Contractor, except such as may be granted to the General Contractor by change order for such work." (Emphasis added)

An examination of the pertinent parts of the voluminous specifications which were introduced into evidence discloses that sections 5, 18, and 23 contain nothing of any relevancy to this action. Sections 17, 19, 20, and 21 contain specifications as to the electrical work required to be done by the Air Conditioning Contractor of which only Section 21–43 need be quoted:

"*Electrical Work.* All manual or automatic control and protective or signal devices required for the operation of the air-conditioning equipment herein specified *and any wiring required but not indicated on the electrical plans shall be furnished and installed under this section of the specifications.* Wiring shall conform to ELECTRICAL WORK, INTERIOR." (Emphasis added)

Section 22 deals with Interior Electrical Work to be completed by the Electrical Contractor. The scope is shown by section 22–01.

"*Scope.* The work covered by this section of the specifications consists in

furnishing all labor, equipment, supplies, and materials, including lamps, and in performing all operations including cutting, channeling, and chasing, necessary *for the installation of complete interior wiring systems, duct systems, electric service connections, and electrical equipment, in strict accordance with this section of the specifications and the applicable drawings,* and subject to the terms and conditions of the contract." (Emphasis added)

After the contracts had been signed, a dispute arose as to which subcontractor was responsible for the installation of certain electrical work on the air conditioning equipment. The Electrical Contractor took the position that such installation was the responsibility of the Air Conditioning Contractor and the Air Conditioning Contractor took the position that it was the responsibility of the Electrical Contractor. The parties were unable to reach an agreement. Thereafter the General Contractor ordered the Electrical Contractor to do the work using a purchase requisition and not a change order which was the normal form used when additional work was ordered which would be paid for by the General Contractor. The subcontracts gave to the General Contractor broad discretion to use any appropriate means to insure prompt completion of the contract and the Court is satisfied that the rights of the parties were not changed by the particular procedure used. No rights were waived, nor was there any waiver when the settlement was made with the subcontractors upon completion of the job.

■ The primary issue presented to the lower court and which is now before this Court through appropriate assignments of error is whether the electrical work in question was by the specifications and plans required under Section 21 or 22. It will be seen from the aforequoted sections of the specifications that the Air Conditioning Contractor was only obligated to do wiring "required but not indicated on the electrical plans" whereas the Electrical Contractor was obligated to furnish labor and supplies necessary "for the installation of complete interior wiring systems, duct systems, electric service connections and electrical equipment in strict accordance with this section of the specifications and the applicable drawings * * *." Section 22–18 of the electrical work specifications further provides:

"2–18 * * * Controllers for motors, disconnect switches, and all control, protective, and signal devices for motor circuits except where such apparatus is furnished mounted and connected integral with the motor-driven equipment, shall be installed, connected and left in operating condition."

The contract drawings, as pointed out in section 22–03 of the electrical work specifications, "indicate the extent and general arrangement of the conduit and wiring systems." After thoroughly reviewing the specifications, the subcontracts, the plans, and the oral testimony, we are of the opinion that the control wiring for the air conditioning equipment was required to be done by the Electrical Contractor. This requires a reversal of the judgment against the Air Conditioning Contractor and his complete discharge.

██ Although the Electrical Contractor was obligated to do the control wiring as a part of his contract, it is clear from the evidence that, due to equipment and plan changes, extra work was necessary for which the Electrical Contractor is entitled to receive additional compensation. Wunderlich Contracting Company v. United States ex rel. Reischel & Cottrell, 240 F.2d 201 (10th Cir. 1957). It is impossible for this Court to determine the amount. Therefore the cause must be reversed for a new trial so that plaintiff can establish what portion of the work for which he seeks to collect falls in this category.

A part of the work for which the Electrical Contractor sought compensation was electrical wiring of equipment known as a fume hood and roto-clone. Section 24 of the specifications deals with the installa-tion of this equipment and does not contain a clause relating to electrical work. It became apparent at the trial that the Air Conditioning Contractor had no responsibility for this equipment and the third party plaintiff amended his complaint so as to exclude any claim for such. The evidence as it relates to this work is minimal, the primary concern of the parties having centered around the question of responsibility for the control wiring of the air conditioning equipment. In support of its claim for this work the Electrical Contractor introduced into evidence a work order signed by the superintendent for the General Contractor which stated: "Installing extra wiring on Fume Hood. Wiring not covered on plans & specs." It therefore clearly appears that there was extra work done for which the Electrical Contractor was entitled to additional compensation. On the other hand the original plans and specifications contemplated the running of electrical wiring to some of the equipment in the roto-clone and fume hood and we are of the opinion that such contemplated wiring is embraced within section 22–01 of the Interior Electrical Work specifications.

The judgment is reversed and remanded to the Superior Court of Maricopa County with instructions to enter judgment in favor of third party defendant and to set aside the judgment obtained by plaintiff against

defendant Meyer. The lower court is further instructed to grant a new trial in order to determine what portion of the work in question comprised extra work for which plaintiff is entitled to additional compensation.

STRUCKMEYER and JENNINGS, JJ., concur.